**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RASUL FREELAIN, | ) | |
| | ) | |
| Plaintiff, | ) | 13-cv-3682 |
| | ) | |
| vs | ) | JUDGE DURKIN |
| | ) | |
| VILLAGE OF OAK PARK, | ) | MAGISTRATE JUDGE MARTIN |
| a municipal corporation, | ) | |
| SERGEANT DINA VARDAL, | ) | |
| in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff Rasul Freelain, by his attorneys, BARRIDO & ROBISON, LLC complain of

Defendants Village of Oak Park and Sergeant Dina Vardal and states as follows:

**PARTIES**

1. This case concerns alleged retaliation and interference in violation of the Family and

   Medical Leave Act of 1993, alleged discrimination on the basis of disability, perception of

   disability, and/or record of disability, all in violation of the Americans with Disabilities Act

   of 1990, violation of the Illinois Gender Violence Act, and assault and battery.

2. At all times relevant to this complaint Plaintiff Rasul Freelain was a police officer for the

   Village of Oak Park and a resident of the City of Chicago, County of Cook, Illinois.

3. At the time of the incidents Defendant Village of Oak Park was the employer of Defendant

   Vardal. The Village is sued on a theory of *respondeat superior* on the state law claims,

   except for Count VI.

4. At the time of the incidents Defendant Vardal, who is sued in her individual capacity, was acting under color of law and within the course and scope of her employment as a sworn police officer for the Village of Oak Park.

**FACTS LEADING TO PLAINTIFF'S REQUEST FOR FMLA LEAVE**

5. Mr. Freelain is a 10-plus year veteran of the Oak Park Police Department ("OPPD"), starting his employment in 2002.

6. By 2007 Mr. Freelain was working as a detective in the Juvenile Investigations Division; Defendant Vardal was a sergeant. It was at this time that Defendant Vardal made her first romantic and/or sexual advance towards Mr. Freelain.

7. Mr. Freelain rebuffed Defendant Vardal's romantic and/or sexual advances.

8. Immediately thereafter Defendant Vardal began to retaliate against and harass Mr. Freelain. Her demeanor changed – once cordial, Defendant Vardal regularly shunned Mr. Freelain, and when she did communicate with Plaintiff she was exceedingly rude. Defendant Vardal twice ridiculed Mr. Freelain in front of co-workers. Also, as a sergeant who out-ranked Mr. Freelain, Defendant Vardal began rejecting his arrest reports for inconsequential typographical errors, requiring Mr. Freelain to correct and resubmit his reports whenever Defendant Vardal was supervising.

9. Mr. Freelain tried to avoid Defendant Vardal, but his shifts as a detective regularly overlapped with Ms. Vardal's shifts. Thus, from Mr. Freelain's rejection of Defendant Vardal's advances in 2007 through 2011 Mr. Freelain was regularly harassed and demeaned by Ms. Vardal. This retaliatory conduct included but was not limited to rude treatment, compelling Mr. Freelain to resubmit reports, coming to the scene of a traffic stop and

ridiculing Mr. Freelain in front of fellow officers, and criticizing Mr. Freelain over open police radio.

10. In January 2012, Mr. Freelain's wife became seriously ill. Needing more flexibility in his schedule to care for his wife, Plaintiff voluntarily stepped down from his detective position and returned to patrol. Returning to patrol reduced Mr. Freelain's ability to avoid Defendant Vardal and meant she would have more opportunities to act as Plaintiff's immediate supervisor.

11. In early April 2012 Mr. Freelain called his commander's office, but Defendant Vardal answered the telephone. Defendant Vardal intimated that she had just reviewed video of Mr. Freelain conducting a DUI field sobriety test and that he had made one or more mistakes. Mr. Freelain responded that his skills were steadily improving since returning to patrol, and Defendant Vardal countered that Plaintiff looked "cute" the way he was doing the exam. This made Mr. Freelain very uncomfortable.

12. In late April 2012, Defendant Vardal approached Plaintiff in the OPPD parking facility. Defendant Vardal stated that Mr. Freelain needed to improve his DUI skills and offered to train Mr. Freelain. Mr. Freelain, trying to deflect the comment, stated that the entire department could benefit from supplemental training. Undeterred, Defendant Vardal stated her intention to provide Plaintiff with "one on one training" on her "own personal time." Plaintiff demurred and abruptly ended the interaction.

13. Mr. Freelain continually lived with this harassment and mistreatment for years, during which time Defendant Vardal told him that if she ever had any problem she took it to Deputy Chief Ambrose, who would take care of it. Mr. Freelain witnessed other OPPD

officers make complaints against Defendant Vardal only to be subjected to discipline or retaliation themselves.

14. Mr. Freelain was at his wit's end on May 5, 2012 when Defendant Vardal called Plaintiff on his personal cell phone. Unwilling and unable to permit the harassment to escalate further, Mr. Freelain orally complained to Human Resources Director Frank Spataro on May 9, 2012 and submitted a written complaint for sexual harassment against Defendant Vardal on May 10, 2012.

15. On May 19, 2012, Mr. Freelain was in uniform and working in conjunction with Chicago Police Officers as added support for that weekend's NATO Summit being held in Chicago. While assisting Chicago Police investigate a suspicious vehicle at a Chicago Transit Authority train station, Mr. Freelain was startled to find himself being pushed backward.

16. Mr. Freelain turned to face his aggressor and saw Defendant Vardal, who continued to push Plaintiff backwards until he was pinned against his squad car. Defendant Vardal, inches from Mr. Freelain's face, told Plaintiff repeatedly to "look out" before releasing Plaintiff and walking away.

17. Mr. Freelain then spoke with his immediate supervisor, Sergeant Curtain, who witnessed this incident, and explained that he had filed a sexual harassment complaint against Defendant Vardal. Sergeant Curtain advised Plaintiff to supplement his complaint to include a battery complaint and that Curtain had witnessed the battery occur.

## PLAINTIFF REQUIRES FMLA LEAVE

18. Over the next several days Mr. Freelain began to feel sick, anxious, and experienced headaches. On May 21, 2012, Mr. Freelain reported the battery and his physical symptoms to Mr. Spataro and expressed his desire to file criminal charges against Defendant Vardal.

4

Mr. Spataro assured Plaintiff that the matter would be thoroughly examined by an independent investigator.

19. That same day Plaintiff met with Deputy Chief Anthony Ambrose. Mr. Ambrose indicated that he, along with another commander, would personally conduct the criminal investigation. Mr. Ambrose also stated that Mr. Freelain could not file criminal complaints until the investigation was completed.

20. Mr. Freelain forewent working a special DUI assignment the following Memorial Day weekend, because he knew Defendant Vardal was in charge. Thus, to avoid losing any further wages, Plaintiff wrote Mr. Spataro, Chief of Police Rick Tanksley, and the Village Manager on June 1, 2012 requesting that Defendant Vardal be placed on administrative leave until the investigation was complete.

21. That very day Plaintiff was summoned to a meeting with Chief Tanksley, Deputy Ambrose, and Commander Keenan Williams, where Plaintiff was told in no uncertain terms that Defendant Vardal would not be placed on administrative leave and was chastised for requesting union representation at the meeting. Mr. Freelain left the meeting dejected and believing not that the investigation would go nowhere and that retaliation for filing the complaint was assured.

## DEFENDANT VILLAGE DISCRIMINATES AGAINST PLAINTIFF DUE TO DISABILITY

22. Over the summer of 2012, the "investigation" of Defendant Vardal continued, and Mr. Freelain's health deteriorated. Plaintiff began seeing a psychologist to cope with his anxiety and stress, but his headaches became more severe. By August 2012 Mr. Freelain's headaches and attendant fatigue were so bad he began to call in sick.

5

23. On or about August 21, 2012, having used several sick days, a supervisor asked Plaintiff if his illness was work related; Plaintiff stated it was. By late August 2012, Mr. Freelain was on medication for migraines.

24. In August or September 2012, Mr. Freelain applied for time off under the Family Medical Leave Act ("FMLA"), which was approved on September 24, 2012. The actions of Defendant Vardal were the proximate cause of Mr. Freelain's need for leave.

25. On September 27, 2012, Mr. Freelain received a call from Commander Williams ordering Plaintiff to attend a meeting the following day with Chief Tanksley. Williams was informed Plaintiff had a doctor's appointment that day. Williams told Plaintiff to reschedule the appointment as failure to attend would subject Mr. Freelain to discipline and possible termination. At his rescheduled doctor appointment that evening, Mr. Freelain was told he was being cleared to return to work.

26. At the September 28, 2012 meeting with Chief Tanksley and Deputy Ambrose, Tanksley told Mr. Freelain that his absences called into question Plaintiff's fitness for duty. Tanksley ordered Plaintiff to complete a fitness for duty evaluation and stated further that Plaintiff could not return to work until the evaluation was complete.

27. On October 1, 2012, Plaintiff spoke to Sergeant Curtain, who stated that the fitness evaluation would begin the following day and orders were that Plaintiff would be listed as absent "self sick" until the evaluation was completed.

28. A "self sick" absence is considered a non-work related illness or injury by the Defendant Village, so an officer's sick days and/or vacation days are used for each "self sick" absence.

29. Conversely, an officer listed as absent "sick accident" is considered a work related absence, meaning an officer so categorized still receives pay instead of being docked vacation and/or sick days.

30. Plaintiff was not informed by any OPPD personnel at any time that his categorization was optional or that he could apply to be categorized "sick accident."

31. Mr. Freelain spent approximately eight hours at his fitness for duty evaluation on October 2, 2012, but he was informed the evaluation was incomplete and to return on October 9, 2012. The evaluation was completed on said date, yet Mr. Freelain remained off of work – and "self sick" – until November 15, 2012.

32. Plaintiff wrote numerous letters to Mr. Spataro and the police union president. Finally, on November 15, Mr. Freelain was told by the Village Defendant's hired doctor what his own doctors had already told him: he was fit for duty and cleared to return to work.

33. Mr. Freelain's sick days were exhausted – in fact, they had run negative causing his pay to be docked. Mr. Freelain, believing his illness was work related, sought to have his sick days reinstated. Mr. Freelain was still attempting to have his sick days returned when his wife was diagnosed with cancer in late December 2012.

34. When Mr. Freelain attempted to utilize FMLA time in early January 2013 to care for his wife post-surgery, he was informed he had no FMLA leave available. Finally, a portion of Plaintiff's sick days were returned, enabling Mr. Freelain to care for his wife from late January to early March 2013. But because some of his absences were still deemed "self sick" Mr. Freelain ran out of FMLA leave as his wife started to experience complications.

35. Mr. Freelain contacted the Village Defendant repeatedly seeking an extension of his FMLA leave, but his calls and emails were ignored. Though his wife needed near continuous care,

Mr. Freelain returned to work on or about March 8, 2013. Because of his "self sick" days off, and because his requests for an extension were ignored, Mr. Freelain was not able to secure an extension of his FMLA leave until late April 2013.

36. On April 3, 2013, Mr. Freelain filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Therein, he alleged sexual harassment, discrimination due to disability, and retaliation.

37. Since filing his charge with the EEOC, Mr. Freelain has experienced additional retaliation, including but not limited to commanding officers refusing to approve and/or sign paperwork submitted by Plaintiff, interfering with shift changes so that Plaintiff could care for his wife, being told he was under investigation, and being insulted in front of his fellow officers.

38. Defendant Vardal and the Defendant Village were motivated to retaliate against Mr. Freelain because he had complained of Vardal's sexual harassment. The Defendant Village developed further retaliatory animus as a result of Mr. Freelain asserting his rights under the FMLA.

## JURISDICTION & VENUE

39. The incidents giving rise to this Complaint occurred in the Village of Oak Park, County of Cook, Illinois.

40. This Court has jurisdiction under §107(a)(2) of the Family and Medical Leave Act of 1993 [29 U.S.C. §2617(a)(2)], §107(a) of the Americans with Disabilities Act of 1990 [42 U.S.C. 12117(a)] (incorporating §706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended, [42 U.S.C. §2000e-5(f)(3)]), §§1331 and 1343 of the Judicial Code [28 U.S.C. §§1331 and 1343] and has supplemental jurisdiction under §1367 of the Judicial Code [28 U.S.C. §1367].

41. Venue is proper under 28 U.S.C. § 1391(b) as all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within this district.

<u>**Count I – FMLA Retaliation**</u>
<u>**(Rasul Freelain v. Village of Oak Park)**</u>

42. Mr. Freelain realleges paragraphs 1 – 41 of this First Amended Complaint.

43. At all times relevant to this complaint, Defendant Village was an "employer" within the definition of §101(4)(A) of the Family and Medical Leave Act of 1993 [29 U.S.C. §2611(4)(A)].

44. At the time of his applications, Mr. Freelain was an "eligible employee" within the definition of §101(2) of the Family and Medical Leave Act of 1993 [29 U.S.C. §2611(2)].

45. Defendant Village, by categorizing Plaintiff as "self sick," requiring a fitness for duty evaluation, delaying the completion of the fitness for duty evaluation, delaying the results of the fitness for duty evaluation, refusing to reinstate Plaintiff, refusing to timely correct the categorization of Plaintiff's absences as "sick accident," and refusing to communicate with Plaintiff regarding an FMLA extension, retaliated against Mr. Freelain and/or discriminated against him for his exercise of his rights under the Family and Medical Leave Act of 1993 in violation of the anti-interference and anti-discrimination provisions of §105(a) of the Family and Medical Leave Act of 1993 [29 U.S.C. §2615(a)], and/or of the Department of Labor's anti-retaliation and anti-discrimination regulation [29 C.F.R. §825.220], and/or of the Department of Labor's fitness for duty regulation [29 C.F.R. §825.312].

46. As a proximate result of this retaliation, Mr. Freelain suffered the damages alleged.

**WHEREFORE**, Plaintiff prays for:

a.  Wages, employment benefits, educational benefits, and other compensation lost to him as a result of Defendant Village's retaliation against him in violation of the Family and Medical Leave Act of 1993;

b.  Prejudgment interest at the prevailing rate from the date he was retaliated against to the date of judgment on the award of wages, employment benefits, and other compensation lost to him as a result of Defendant Village's retaliation against him in violation of the Family and Medical Leave Act of 1993;

c.  Liquidated damages doubling the award of interest, wages, lost employment benefits, and other compensation lost to him as a result of Defendant Village's retaliation against him in violation of the Family and Medical Leave Act of 1993;

d.  Reasonable attorney's fees and the costs and expenses of this action; and

e.  Such other relief as this Court deems just.

### Count II – FMLA Interference
### (Rasul Freelain v. Village of Oak Park)

47. Mr. Freelain realleges paragraphs 42 - 44 of this First Amended Complaint.

48. Defendant Village, by categorizing Plaintiff as "self sick," requiring Plaintiff to complete a fitness for duty evaluation, delaying the completion of the fitness for duty evaluation, delaying the results of the fitness for duty evaluation, refusing to reinstate Plaintiff, refusing to timely correct the categorization of Plaintiff's absences as "sick accident," and refusing to communicate with Plaintiff regarding an FMLA extension, interfered with his exercise of his then-current Family and Medical Leave Act rights and/or with his exercise of his then-future Family and Medical Leave Act rights, all in violation of the anti-interference provisions of §105(a) of the Family and Medical Leave Act of 1993 [29 U.S.C. §2615(a)] and/or of the Department of Labor's anti-retaliation and anti-discrimination regulation [29

C.F.R. §825.220], and/or of the Department of Labor's fitness for duty regulation [29 C.F.R. §825.312].

49. As a proximate result of this interference, Mr. Freelain suffered the damages alleged.

> **WHEREFORE**, Plaintiff prays for:

    a.    Wages, employment benefits, educational benefits, and other compensation lost to him as a result of Defendant Village's interference with his rights under the Family and Medical Leave Act of 1993;

    b.    Prejudgment interest at the prevailing rate from the date of interference to the date of judgment on the award of wages, employment benefits, and other compensation lost to him as a result of Defendant Village's interference with his rights under the Family and Medical Leave Act of 1993;

    c.    Liquidated damages doubling the award of interest, wages, lost employment benefits, and other compensation lost to him as a result of Defendant Village's interference with his rights under the Family and Medical Leave Act of 1993;

    d.    Reasonable attorney's fees and the costs and expenses of this action; and

    e.    Such other relief as this Court deems just.

### Count III – ADA Discrimination
### (Rasul Freelain v. Village of Oak Park)

50. Mr. Freelain realleges paragraphs 1 – 41 of this First Amended Complaint.

51. Defendant Village is an "employer" within the definition of §101(5) of the Americans with Disabilities Act of 1990, as amended [42 U.S.C.§12111(5)].

52. Mr. Freelain is an "employee" of Defendant's within the definition of §101(4) of the Americans with Disabilities Act of 1990, as amended [42 U.S.C. §12111(4)] and a

"qualified individual with a disability" within the definition of §101(8) of the Americans with Disabilities Act of 1990, as amended [42 U.S.C. §12111(8)].

53. Mr. Freelain has fulfilled all conditions precedent to bringing this ADA claim. His Charge of Discrimination filed with the Equal Employment Opportunity Commission is attached to this Complaint as Exhibit A, and his Notice of Right to Sue on that Charge is attached as Exhibit B.

54. The Defendant Village, by threatening Mr. Freelain with discipline and termination, denying him union representation, categorizing him as "self sick" while on leave, forcing him to complete a fitness for duty evaluation and delaying both the evaluation and its results, and refusing/delaying/interfering with the reinstatement of Plaintiff's leave time discriminated against Mr. Freelain on the basis of his disability and/or perceived disability and/or record of disability.

55. As a proximate result of this disability discrimination, Mr. Freelain lost wages, lost employee benefits, and suffered pain.

**WHEREFORE**, Plaintiff prays for:

   a. Back pay, employment benefits, and other compensation lost as a result of Defendant's discriminating against him in violation of the Americans with Disabilities Act;

   b. Prejudgment interest at the prevailing rate on the award of back pay, lost employment benefits, and other compensation lost as a result of Defendant's discriminating against him in violation of the Americans with Disabilities Act;

   c. Compensatory damages for the harm he suffered as a result of Defendant's discriminating against him in violation of the Americans with Disabilities Act, as

amended;

    d. Reasonable attorney's fees, expert witness fees, expenses, and costs of this action and of prior administrative actions; and,

    e. Such other relief as this Court deems just.

### Count IV – ADA Retaliation
### (Rasul Freelain v. Village of Oak Park)

56. Mr. Freelain realleges paragraphs 50 – 53 of this First Amended Complaint.

57. The Defendant Village, by threatening Mr. Freelain with discipline and termination, denying him union representation, categorizing him as "self sick" while on leave, forcing him to complete a fitness for duty evaluation and delaying both the evaluation and its results, and refusing/delaying/interfering with the reinstatement of Plaintiff's leave time retaliated against Mr. Freelain on the basis of his disability or perceived disability or record of disability.

58. As a proximate result of this retaliation, Mr. Freelain lost wages, lost employee benefits, and suffered pain.[1]

**WHEREFORE,** Plaintiff prays for:

    a. Back pay, employment benefits, and other compensation lost as a result of Defendant's retaliating against him in violation of the Americans with Disabilities Act;

    b. Prejudgment interest at the prevailing rate on the award of back pay, lost employment benefits, and other compensation lost as a result of Defendant's

---

[1] Compensatory damages are currently unavailable in this Circuit for retaliation claims under the ADA, see Kramer v. Banc of America Securities, LLC, 355 F. 3d 961 (7th Cir. 2004), and this paragraph is pled based on a non-frivolous argument for extending, modifying, or reversing existing Circuit law or for establishing new Circuit law and to preserve the issue for appeal.

retaliating against him in violation of the Americans with Disabilities Act;

c. Compensatory damages for the harm he suffered as a result of Defendant's
retaliating against him in violation of the Americans with Disabilities Act [See
footnote 1];

d. Reasonable attorney's fees, expert witness fees, expenses, and costs of this action
and of prior administrative actions; and,

e. Such other relief as this Court deems just.

**Count V – State Law Claim**
**Illinois Gender Violence Act**
**(Rasul Freelain v. Dina Vardal)**

59. Mr. Freelain realleges paragraphs 1 – 41 of this First Amended Complaint.

60. The above alleged acts of violence or physical aggression were committed, at least in
part, on the basis of Mr. Freelain's sex.

61. Defendant subjected Mr. Freelain to a physical intrusion or invasion under coercive
conditions due to his sex.

62. Defendant, through its agent Sergeant Vardal acting in the scope and/or course of her
employment, subjected Mr. Freelain to the threats and acts alleged, causing Mr. Freelain
a realistic apprehension that Sergeant Vardal would commit further acts of violence or
the threats made.

63. Defendant, through its agent Sergeant Vardal acting in the scope and/or course of her
employment, subjected Mr. Freelain to gender related violence as defined in Section 5 of
the Gender Violence Act, 740 ILCS 82/5.

**WHEREFORE**, Plaintiff prays for:

    a.       An amount sufficient to fully and justly compensate him for the damages he

            suffered,

    b.       Punitive damages,

    c.       Reasonable attorney's fees and the costs and expenses of this action, and

    d.       Such other relief as this Court deems just.

### COUNT VI – State Law Claim
### Assault & Battery
### (Rasul Freelain v. Dina Vardal)

1. Mr. Freelain realleges paragraphs 1 – 41 of this First Amended Complaint.

2. The actions of Defendant Vardal in physically abusing Plaintiff, constituted intentional harmful and/or offensive contacts against the Plaintiff and/or caused him to be reasonably apprehensive of imminently receiving such contact without provocation or legal justification.

3. The actions of Defendant Vardal were the direct and proximate cause of the injuries suffered by the Plaintiff.

**WHEREFORE**, Plaintiff prays for:

    a.       An amount sufficient to fully and justly compensate him for the damages he

            suffered,

    b.       Punitive damages,

    c.       Reasonable costs and expenses of this action, and

    d.       Such other relief as this Court deems just.

### JURY DEMAND

Rasul Freelain hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims.

Respectfully Submitted,


s/ Matthew Robison
An Attorney for the Plaintiffs
Attorney No. 6291925


Matthew Robison
Brian Barrido
BARRIDO & ROBISON, LLC
330 S. Wells St., Suite 1410
Chicago, IL 60606
773.672.7400 (phone/fax)
matthew@brchicago.com