| | | |
|---|---|---|
| RASUL FREELAIN, | ) | |
| | ) | No. 13 C 3682 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| VILLAGE OF OAK PARK AND DINA VARDAL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Rasul Freelain filed his first amended complaint on August 30, 2013, against the Village of Oak Park (the "Village") and Dina Vardal, a Sergeant for the Village of Oak Park Police Department ("OPPD"). R. 24. He alleges violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Illinois Gender Violence Act ("IGVA"), 740 ILCS 82/1 *et seq.*; as well as claims under Illinois state law for assault and battery. The Defendants have moved to dismiss the entire amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 35. For the following reasons, the motion to dismiss is granted in part, and denied in part.

## BACKGROUND

The following facts, drawn from Freelain's first amended complaint, are accepted as true, and all reasonable inferences are drawn in Freelain's favor. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

Freelain has been with the OPPD since 2002. R. 24 ¶ 5. In 2007, Freelain was working as a detective in the Juvenile Investigations Division while Vardal was a sergeant. R. 24 ¶ 6. Freelain alleges that Vardal began making "romantic and/or sexual advances" towards him around that time, which he rebuffed. R. 24 ¶¶ 6-7. Freelain further alleges that Vardal then began to retaliate against and harass him through 2011, including shunning him and being rude to him in front of co-workers. R. 24 ¶¶ 8-9. He claims that Vardal, who out-ranked him, began making his job more difficult in a number of ways, including "rejecting his arrest reports for inconsequential typographical errors [and] requiring [him] to correct and resubmit his reports whenever [] Vardal was supervising." R. 24 ¶¶ 8-9. Freelain tried to avoid Vardal, but their shifts regularly overlapped. R. 24 ¶ 9.

Freelain's wife became seriously ill in January 2012. R. 24 ¶ 10. Freelain alleges that he needed more flexibility with his schedule to care for her, so he voluntarily relinquished his detective position and returned to patrol. R. 24 ¶ 10. He claims this change in position made it more difficult for him to avoid Vardal and that Vardal gained more opportunities to be his immediate supervisor. R. 24 ¶ 10.

Freelain alleges that in April 2012, he had a phone call with Vardal during which Vardal said that Freelain made mistakes during a DUI field sobriety test, but also that Freelain looked "'cute' the way he was doing the exam." R. 24 ¶ 11. According to Freelain, later that month, Vardal told Freelain that he needed DUI skills training and that she could provide him "with 'one on one training' on her 'own personal time.'" R. 24 ¶ 12. Freelain contends that Deputy Chief Anthony

Ambrose was the go-to person for complaints but that Freelain "witnessed other OPPD officers make complaints against [] Vardal only to be subjected to discipline or retaliation themselves." R. 24 ¶ 13.

On May 5, 2012, Vardal allegedly called Freelain on his personal phone, causing Freelain to complain to Frank Spataro, the OPPD Human Resources Director, on May 9, 2012, as well as submit a written report on May 10, 2012, against Vardal for sexual harassment. R. 24 ¶ 14.

Nine days later, on May 19, Freelain was in uniform and working with the Chicago Police Department for the NATO Summit in Chicago. R. 24 ¶ 15. He claims that at some point that day, Vardal pushed him from behind and, when he turned around, pinned him against his squad car and told him repeatedly to "look out." R. 24 ¶¶ 15-16. Freelain claims he "spoke with his immediate supervisor, Sergeant Curtain, who witnessed [the] incident, and explained that he had [previously] filed a sexual harassment complaint against [] Vardal." R. 24 ¶ 17. According to Freelain, Sergeant Curtain told Freelain to "supplement his complaint to include a battery complaint and that Curtain had witnessed the battery occur." R. 24 ¶ 17.

On May 21, 2012, Freelain reported the battery and his alleged feelings of sickness, anxiousness, and headaches to Spataro; he also expressed a desire to file criminal charges against Vardal. R. 24 ¶ 18. Spataro told Freelain "that the matter would be thoroughly examined by an independent investigator," and later that day, Freelain met with Deputy Chief Ambrose, who said that he would conduct the criminal investigation with another commander and that Freelain could not file any

criminal complaint until after the investigation. R. 24 ¶¶ 18-19. On June 1, 2012, Freelain wrote to Rick Tanksley, Chief of the OPPD; Spataro; and the Village Manager, "requesting that [] Vardal be placed on administrative leave until the investigation was complete." R. 24 ¶ 20. Freelain alleges that request was denied. R. 24 ¶ 21.

Freelain claims that his health deteriorated over the summer of 2012 while the investigation of Vardal continued; he began to call in sick because of "headaches and attendant fatigue" in August 2012. R. 24 ¶ 22. On August 21, 2012, Freelain says that a supervisor asked him if his "illness" was work related—Freelain said it was—and that he began taking medication for his migraines by the end of the month. R. 24 ¶ 23. Shortly thereafter, Freelain applied for time off under the FMLA, which was approved on September 24, 2012. R. 24 ¶ 24. Freelain claims Vardal's conduct was the proximate cause of his need for leave. R. 24 ¶ 24.

On September 27, 2012, Freelain received a call from Commander Keenan Williams informing Freelain of a meeting planned the next day with Chief Tanksley. R. 24 ¶ 25. Freelain told Commander Williams that he had a doctor's appointment then, to which Commander Williams allegedly responded that Freelain needed to "reschedule the appointment as failure to attend would subject [him] to discipline and possible termination." R. 24 ¶ 25. Freelain rescheduled his appointment for later that night so he could attend the meeting, and Freelain's doctor cleared him to work during that appointment. R. 24 ¶ 25.

The next day, Freelain met with Chief Tanksley and Deputy Ambrose, and Chief Tanksley told Freelain that his absences called into question his fitness for duty. R. 24 ¶ 26. Freelain alleges that Chief Tanksley then ordered him to complete a fitness evaluation and said he could not work until it was completed. R. 24 ¶ 26.

Freelain spoke to Sergeant Curtain on October 1, 2012, who explained that Freelain's evaluation would be on October 2 and that Freelain would be listed as "self sick" until he successfully completed the evaluation. Freelain alleges that the Village considers a "self sick" absence to be a "non-work related illness or injury," so any day being used as a "self sick" day counts towards an officer's sick and/or vacation days. R. 24 ¶ 28. Conversely, a "sick accident" designation qualifies as a work-related absence; thus, an officer continues to receive his pay and is not docked any vacation and/or sick days. R. 24 ¶ 29. Freelain claims that no one told him that "his categorization was optional or that he could apply to be categorized 'sick accident.'" R. 24 ¶ 30.

Freelain underwent his "fitness for duty evaluation" on October 2. R. 24 ¶ 31. He claims that someone told him that his evaluation was incomplete, even though it lasted approximately eight hours, and to return to complete it a week later. R. 24 ¶ 31. On October 9, Freelain completed the evaluation but remained off of work until November 15, 2012, when the Village's doctor cleared him. R. 24 ¶ 31. Freelain claims to have written numerous letters to Spataro and the police union president during that time period; he was also classified as "self sick" during that time. R. 24 ¶¶ 31-32.

When Freelain returned to work, all of his sick days were exhausted, and his pay was docked because he had used extra sick days. R. 24 ¶ 33. As a result, Freelain sought to have his sick days reinstated because he believed his illness was work related. R. 24 ¶ 33. Some of those sick days were returned when Freelain attempted to utilize FMLA time in early January 2013 to care for his wife, but not all. R. 24 ¶ 34. Accordingly, Freelain was able to care for his wife from January to early March 2013, but he eventually ran out of days again. R. 24 ¶ 34. Freelain alleges that he contacted the Village on numerous occasions seeking to have his FMLA extended but that the Village ignored his calls and emails. R. 24 ¶ 35. Eventually, Freelain was forced to return to work on March 8, 2013, because he did not immediately receive an extension; although, Freelain was able to secure an additional FMLA leave extension in late April 2013. R. 24 ¶ 35.

Freelain filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 3, 2013, alleging sexual harassment, discrimination due to disability, and retaliation. R. 24 ¶ 36. He claims that he has experienced additional problems at work since filing his charge, "including but not limited to commanding officers refusing to approve and/or sign paperwork [he submitted], interfering with shift changes so that [he] could care for his wife, being told he was under investigation, and being insulted in front of his fellow officers." R. 24 ¶ 37. And as a result, on May 5, 2013, Freelain initiated this action against the Village and Vardal, contending that they "were motivated to retaliate against [him] because he had complained of Vardal's sexual harassment" and that the Village

"developed further retaliatory animus as a result of [] Freelain asserting his rights under the FMLA." R. 24 ¶ 38. Freelain received a right to sue letter from the EEOC on July 7, 2013, and amended his complaint accordingly on August 30, 2013,

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss any claim over which the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Article III, Section 2 of the U.S. Constitution defines the outer bounds of a federal court's subject matter jurisdiction, although generally, a court's jurisdiction in a non-criminal case arises from a federal question, a deprivation of one's civil rights, or diversity among the parties. *See* 28 U.S.C. §§ 1331, 1332, 1343; *see also Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2010). When a defendant challenges jurisdiction, the plaintiff bears the burden of establishing a court's jurisdiction. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). As with a Rule 12(b)(6) motion, the Court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chi.,* 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir. 1999)).

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter**,** accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann*, 707 F.3d at 877 (quoting *Iqbal*, 556 U.S. at 678).

## ANALYSIS

Freelain's first amended complaint contains six counts. R. 24. Counts I through IV are against the Village—Count I: FMLA retaliation; Count II: FMLA interference; Count III: ADA discrimination; and Count IV: ADA retaliation. R. 24 ¶¶ 42-58. Count V is against Vardal, individually, and the Village under respondeat superior, for violation of the IGVA. R. 24 ¶¶ 59-63. Count VI is against Vardal, individually, and the Village for assault & battery. R. 24 ¶¶ 59-66.[1] The Defendants challenge each count in their motion to dismiss.

## I.    FMLA Counts

Counts I and II allege a violation of the FMLA, which permits an eligible employee to take up to 12 weeks of leave per year because of a "serious health

---

[1] The paragraph numbers in Freelain's first amended complaint restart in Count VI; the Court has taken this error into account.

condition that makes the employee unable to perform the functions of the [employee's] position" or so that the employee can care for a qualifying relative with a serious health condition.[2] 29 U.S.C. § 2612(a)(1).

## A. Rule 12(b)(1)

The Defendants' motion to dismiss first attacks Counts I and II on the ground that the claims are barred by the Illinois Worker's Compensation Act's ("IWCA") exclusive remedy provision, *see* 820 ILCS 305/5, so the Court lacks jurisdiction to review them. The Court disagrees.

The IWCA prohibits a person from recovering in tort or other state law remedies if he receives worker's compensation. *See* 820 ILCS 305/5 ("No common law or statutory right to recover damages from the employer . . . for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act[.]"). However, the federal regulations expressly permit an individual to receive worker's compensation while on FMLA leave. *See* 29 C.F.R. § 825.702(d)(2) ("An employee may be on a workers' compensation absence due to an on-the-job injury which also qualifies as a serious health condition under FMLA. The workers' compensation and FMLA leave may run concurrently (subject to proper notice and designation by the employer)."). And Freelain's claims here involve whether the Defendants acted in violation of the FMLA, not whether

---

[2] The Court notes that Freelain applied for FMLA leave in September 2012 for his own medical condition; it appears that his later requests for leave were to care for his wife. *See* R. 24 ¶¶ 23-24, 33-35. This distinction does not affect the Court's analysis at this juncture.

Freelain should be able to recover under some Illinois-sanctioned remedy. Thus, the Court is not just "review[ing] claims for work-related injuries," so the Defendants' reliance on the cases they cite—which only deal with the IWCA's application to Illinois common-law claims—is misplaced. *See* R. 36 at 3 (citing *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1017 (7th Cir. 1997); *Rushing v. United Airlines*, 919 F. Supp. 1101, 1112 (N.D. Ill. 1995); *Al-Dabbagh v. Greenpeace, Inc.*, 873 F. Supp. 1105, 1112 (N.D. Ill. 1994)).

In short, Freelain alleges that the Village retaliated against him/interfered with the exercise of his FMLA rights *by* categorizing him as "self sick" and taking other actions related to his worker's compensation. R. 24 ¶¶ 45, 48. That is sufficient to make this case more than a simple Illinois state law, work-related injury claim governed by the IWCA. The Defendants' challenge to Counts I and II under Rule 12(b)(1) thus fails.[3]

### B. Rule 12(b)(6)

The Defendants' alternative argument is that Counts I and II are insufficiently pled under Rule 12(b)(6). Looking first to Count I (FMLA retaliation),

---

[3] To the extent the Defendants' brief can be construed as arguing that the IWCA bars Freelain from suing Vardal or the Village on the IGVA claim in Count V or the assault/battery claims in Count VI, that argument is without merit at this point. Freelain alleges that the conduct complained of in Counts V and IV was intentional, and therefore, the IWCA exclusive remedy provision would not apply. *See Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1226 (Ill. 1990); *see also Senesac v. Employer's Voc. Res.*, 754 N.E.2d 363, 373 (Ill. App. Ct. 1st Dist. 2001) ("[I]ntentional torts . . . fall outside the scope of the [IWCA] as they are not accidental and do not arise from the *conditions* of the employment.") (emphasis added). This is true despite Freelain's allegation that Vardal was acting within the scope of her employment during the conduct of which Freelain complains. *See* R. 24 ¶¶ 3-4.

Freelain must sufficiently allege that: (1) he engaged in a statutorily protected activity; (2) his employer took a materially adverse action against him; and (3) there is a causal connection between the two. *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011). The claim also "requires proof of discriminatory or retaliatory intent, which can be established directly or indirectly." *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012).

The Defendants contend Freelain has not alleged elements two and three— an adverse employment action against him and a causal connection between Freelain's taking of FMLA leave and an adverse employment action by the Village. R. 36 at 7.[4] They argue that Freelain himself admits that he did not apply to be categorized as "sick accident," so Freelain cannot satisfy the second and third elements. R. 24 ¶ 30. If that was Freelain's only allegation, the Defendants would be correct; Count I would be inadequately pled. Freelain alleges, however, that he told a supervisor on August 12, 2012, that his illness was work related. R. 24 ¶ 23. He also details a long series of events which arguably show why the Defendants might be upset that Freelain took FMLA leave. R. 24 ¶¶ 13-38. And taken in the light most favorable to Freelain, these allegations, coupled with the timing of what happened, could establish that Freelain *should* have been classified as "self accident" (an adverse employment action) and the Defendants listed Freelain as "self sick" *because* he requested FMLA leave as a result of Vardal's conduct towards him (a causal connection). *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th

---

[4] The Defendants do not contest the first element, presumably because it is clear that taking FMLA leave satisfies it.

Cir. 2013) (explaining that a "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation" (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993) (internal quotation marks omitted))).

Furthermore, Freelain alleges that "he did not get his full FMLA benefits: he lost sick days, had his pay docked, and was unable to care for his wife," all of which could also be construed as materially adverse employment actions. R. 42 at 10 (citing R. 24 ¶¶ 34-35). *Cf. De La Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008) ("[I]n order to be actionable, 'adverse actions must be materially adverse meaning more than a 'mere inconvenience or an alteration of job responsibilities.'" (quoting *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001))). And lastly, Freelain takes issue with the timing of the fitness evaluation and the delay in his ability to return to work, R. 24 ¶¶ 25-33, which could also be considered an adverse employment action because Freelain claims the delay resulted in unpaid days off. *See Arrigo v. Link Stop, Inc.*, No. 12 C 700, 2013 WL 5498139, at *9-10 (E.D. Wisc. Oct. 4, 2013) (explaining that a delay in reinstatement may satisfy the "materially adverse" element). These allegations are sufficient to defeat the Defendants' challenge to Count I.

Moving to Count II, FMLA interference, Freelain must demonstrate that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the

FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Goelzer v. Sheboygan Cnty.*, 604 F.3d 987, 993 (7th Cir. 2010). The difference between a retaliation claim and an interference claim is the latter "requires only proof that the employer denied the employee his or her entitlements under the [FMLA]." *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005).

The Defendants argue that Freelain has "pled himself out of court" by pleading facts that preclude any scenario under which he could be entitled to relief. R. 36 at 6. To support this argument, they cite Freelain's allegations that (1) in August or September 2012, Freelain "applied for time off under the [FMLA], which was approved on September 24, 2012," R. 24 ¶ 24; and (2) Freelain sought an extension of his FMLA leave and received it in late April 2013. R. 24 ¶ 35. In sum, they believe that Freelain cannot establish an FMLA interference claim because he applied and ultimately received FMLA leave.

The problem with the Defendants' argument, at least with respect to the FMLA extension in April 2013, is the Defendants take Freelain's allegation out of context. *See* R. 36 at 7. The entire paragraph is actually as follows:

> Mr. Freelain contacted the Village Defendant repeatedly seeking an extension of his FMLA leave, but his calls and emails were ignored. Though his wife needed near continuous care, Mr. Freelain returned to work on or about March 8, 2013. Because of his "self sick" days off, and because his requests for an extension were ignored, Mr. Freelain was not able to secure an extension of his FMLA leave until late April 2013.

R. 24 ¶ 35. Freelain's allegation is not that his FMLA extension request was ever denied *in full* or that it was *never* approved, but rather, that the Village only *partially* approved his request and impermissibly *delayed* approval. *See* R. 24 ¶¶ 33-35. Thus, the crux of Freelain's interference claim appears to be that Freelain had to return to work when he otherwise should have been allowed to remain at home. *See* R. 24 ¶¶ 34-35, 48. And this allegation, if true, would demonstrate the Village denied Freelain FMLA leave that he was entitled to take—at least for a period of time—which would in turn establish that Freelain is entitled to relief on his FMLA interference claim. *See generally Coleman v. Ill. Dep't of Human Servs.*, No. 09 C 3596, 2013 WL 5348314, at *18(N.D. Ill. Sept. 24, 2013) (explaining that absences that otherwise would have been covered by the FMLA—but for a delay in approval and the defendants' failure to backdate the paperwork—formed the basis of the employer's adverse employment action, and therefore, the plaintiff satisfied her burden on summary judgment to demonstrate a denial of FMLA benefits). Therefore, the Defendants' challenge to Count II also fails.

## II.     ADA Counts

Counts III and IV allege a violation of the ADA, which prohibits an employer from discriminating against "a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). In order to establish an ADA discrimination claim (Count III), Freelain must allege that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) his employer, the Village, took an adverse job action

against him because of his disability without making a reasonable accommodation for it. *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013). The Defendants contend that Freelain has not sufficiently pled that he has a "disability," as defined by the ADA, so Count III cannot survive. R. 36 at 8-9. The Court agrees.

"A qualified individual under the ADA is a person with a disability who is able to perform the essential functions of the job either with or without a reasonable accommodation." *Majors v. GE Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013). The ADA defines the term "disability" as "a physical or mental impairment that substantially limits one or more major life activities"; "a record of such impairment" or "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Freelain argues that he has provided "more than enough" information to satisfy the "disability" element because he alleged that he has anxiety that results in headaches, attendant fatigue, and migraines. R. 24 ¶¶ 22-23. But even if Freelain has these impairments, having a medically identifiable impairment is not enough to establish Freelain has a disability under the ADA—the focus is on whether the impairments substantially limit a major life activity, not whether an impairment has a name. *See Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011) ("Merely having a physical injury or a medical condition is not enough."). Nonetheless, Freelain argues the reverse to support his position: he suffers from named impairments, and because a person need not have an exact diagnosis to have a "disability," he has alleged enough to survive a Rule 12(b)(6) challenge. R. 42 at

10-12 ("Just as Mr. Freelain does not need to prove a diagnosis, so he does not need to plead one. (citing *Fowler v. UpMC Shadyside*, 578 F.3d 203, 209-12 (3d Cir. 2009))). This backwards reasoning is without support. The Court has conducted a thorough review of Freelain's amended complaint but has not found a factual allegation establishing Freelain's alleged impairments substantially limit a major life activity. *See Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 554 (7th Cir. 2011) ("[C]ourts generally find that short-term, temporary restrictions, with little or no long-term impact, are not substantially limiting and do not render a person disabled for purposes of the ADA."). Accordingly, Freelain has not adequately pled that he has a disability under the ADA; Count III necessarily fails.

Freelain argues that his ADA *retaliation* claim in Count IV should survive because it "only requires him to have had a good-faith belief that he was disabled." R. 42 at 12. In support, he directs the Court to two cases from other circuits. *See Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001); *Mondzelweski v. Pathmark Stores, Inc.*, 162 F.3d 778, 786 (3d Cir. 1998). Both of those cases held that that a person is not required to have a "disability" within the meaning of the ADA to "assert a retaliation claim [under the ADA] based on some form of protected activity." *Mondzelweski*, 162 F.3d at 786; *see Selenke*, 248 F.3d at 1264 ("[I]n order to prosecute an ADA retaliation claim, a plaintiff need not show that she suffers from an actual disability."). The Defendants do not respond to this argument, address either case in their reply brief, or even discuss the elements of an ADA retaliation claim. *See* R. 45 at 3-4. They only argue that Freelain has not

adequately pled the three elements discussed above for an ADA discrimination claim. R. 45 at 3.

This reply is puzzling because Freelain has alleged two separate ADA claims—one for discrimination, the other for retaliation—yet the Defendants essentially lump them into one. R. 45 at 3-4. Nonetheless, as discussed regarding Count I, the elements of a retaliation claim—ADA, FMLA, Title VII, or otherwise— are as follows: (1) the plaintiff engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) there is a causal connection between the two. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1180 (7th Cir. 2013).

Here, Freelain says that he filed a charge with the EEOC complaining of discrimination due to disability and harassment. R. 24 ¶ 36. That is statutorily protected conduct under the ADA, which satisfies the first element.[5] Second,

---

[5] The ADA retaliation provision provides, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). Aside from the EEOC charge, Freelain's amended complaint is devoid of any other factual allegation regarding conduct Freelain engaged in that is protected under the ADA. For example, there is no allegation that Freelain ever requested a reasonable accommodation or that the Village refused to make a reasonable accommodation. *See* § 12112(b)(5)(A); *Cloe*, 712 F.3d at 1176 ("Thus, 'a plaintiff must normally request an accommodation before liability under the ADA attaches.'" (quoting *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012))). The only "request" Freelain seems to have made was for considerable time off under the FMLA, as discussed in Section I. R. 24. And that would not be considered a "reasonable accommodation" because it does not "enable the disabled worker to work in reasonable comfort." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005); *see Basden*, 714 F.3d at 1037 ("A plaintiff whose disability prevents [him] from coming to work regularly cannot perform the essential functions of [his] job, and thus cannot be a qualified individual for ADA

Freelain alleges that since he filed his charge with the EEOC, his commanding officers have refused to "approve and/or sign paperwork," interfered with his shift changes so that he could not care for his wife, told him that he "was under investigation," and "insulted [him] in front of his fellow officers." R. 24 ¶ 36. These could be considered "adverse actions" against him.[6] And finally, Freelain alleges that this "additional retaliation" against him occurred shortly after he submitted his EEOC charge, R. 24 ¶¶ 36-37, which is sufficient at this stage to satisfy the third element. *See Hoppe v. Lewis Univ.*, 692 F.3d 833, 843 (7th Cir. 2012) ("When an adverse employment action follows close[ly] on the heels of protected expression, and the plaintiff can show that the person who decided to impose the adverse action knew of the protected conduct, the causation element of the prima facie case is typically satisfied.") (internal quotation marks omitted). Freelain has, therefore, adequately alleged the ADA retaliation elements.

The next issue is what the Village did not address: whether Freelain is required to plead, for an ADA retaliation claim, that he has a disability. The ADA Amendments Act of 2008 ("ADAA of 2008"), Pub. Law 110-325, makes clear that nothing in the ADA "shall provide the basis for a claim by an individual without a

---

purposes."). Additionally, time off under the FMLA is not statutorily protected conduct *under the ADA*, as required by 42 U.S.C. § 12203(a).

[6] The Court is careful to note that "minor annoyances" or "mere unhappiness and inconvenience[s]" do not constitute adverse employment actions. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 302 (7th Cir. 2004) (citing *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003)). However, taking the allegations in the light most favorable to Freelain, Freelain has alleged enough to survive a Rule 12(b)(6) motion.

disability that the individual was subject to discrimination because of the individual's lack of disability." 42 U.S.C. § 12201(g). Put simply, to prevail on a claim for discrimination under the ADA, a person must have a cognizable disability. That provision, however, does not address the issue of a *retaliation* claim under the ADA. Much of the ADA's language was amended by the ADAA of 2008, but the provision describing what retaliation conduct is prevented by the ADA was not. *See* 42 U.S.C. § 12203(a). Cases like those Freelain cites, *Selenke* and *Mondzelweski*, interpreted the language of the original statute to mean that a plaintiff is not required to establish an actual disability for an ADA retaliation claim, and if Congress had wanted to amend the language or change courts' interpretation of the statute, it could have. *See Bernstein v. Bankert*, 702 F.3d 964, 979 (7th Cir. 2012) ("When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." (quoting *Niagra Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 128 (2d Cir. 2010) (citing *Stone v. INS*, 514 U.S. 386, 397 (1995)))). Congress did not amend the statutory language regarding the "prohibition against retaliation and coercion," *see* 42 U.S.C. § 12203, so the interpretations of the provision prior to the ADAA of 2008 still govern. Accordingly, Freelain was not required to allege that he suffers from an actual disability to adequately plead an ADA retaliation claim.

This conclusion does not end the Court's inquiry, however. Freelain is still required to allege that he had a "good faith" belief that he was disabled when he filed his EEOC charge. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328

(11th Cir. 1998) ("[T]o satisfy the first element of a prima facie case, it is sufficient that an employee have a good faith, objectively reasonable belief that his activity is protected by the statute."). Here, Freelain alleges that he suffered headaches, attendant fatigue, and migraines as a result of stress and anxiety. R. 24 ¶ 22. He also alleges that he saw "a psychologist to cope with his anxiety and stress" and began taking medication for migraines by August 2012. R. 24 ¶ 23. Taken together, the Court finds this information sufficient to establish Freelain's good faith belief that he had a disability and that he engaged in statutorily protected conduct when he filed his EEOC charge. Freelain has sufficiently alleged the required elements of his retaliation claim in Count IV.

## III. Illinois State Law Counts

Count V of Freelain's amended complaint is a claim for violation of the IGVA; Freelain alleges that the Village, through Vardal its agent, subjected him to gender violence as defined in 740 ILCS 82/5.[7] Count VI is a claim for assault and battery against Vardal and the Village based on the May 19, 2012 incident. R. 24 ¶¶ 15-17, 64-66.

### A. Supplemental Jurisdiction

The Defendants' first contention is that the Court should not exercise

---

[7] Section 5 describes "gender-related violence" as (1) "[o]ne or more acts of violence satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex"; (2) "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois"; or (3) "[a] threat or an act described in item (1) or (2) causing a realistic apprehension that the originator of the threat will commit the act." 740 ILCS 82/5.

supplemental jurisdiction over Counts V and VI because they "do not derive from the same nucleus of operative facts" as the claims in Counts I, II, III, IV, which provide the basis for federal jurisdiction in this case. R. 36 at 4. 28 U.S.C. § 1367 allows a district court to decide any "claims" related to other claims over which the court has original jurisdiction "if they are so closely related to the plaintiff's federal-law claims as to be in effect part of the same case." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007) (citing 28 U.S.C. § 1367(a)); *see Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). The purpose of supplemental jurisdiction is to promote "economy in litigation," as it would be inefficient to adjudicate essentially the same issues in two separate forums. *See Williams*, 479 F.3d at 906-08.

In response to the Defendants' argument that Counts V and VI are separate and distinct from the other four counts, Freelain argues that his state law claims "are what led to [him] taking FMLA leave and suffering his ADA disability of anxiety, stress, fatigue, severe headaches, and migraines." R. 42 at 13. He also argues that they help form the basis of the Defendants' retaliatory animus towards him. R. 42 at 13. Other cases provide guidance on the issue.

In *Ammerman v. Sween*, 54 F.3d 423, 424-25 (7th Cir. 1995), the plaintiff alleged a Title VII sexual harassment claim and state law claims for assault and battery. The court held that the claims arose from a common nucleus of operative facts because the employer had a duty to take reasonable steps to discover and rectify sexual harassment, and reasonableness depends on the "gravity of the

harassment." *Id.* at 425. As the court stated, "[W]ithout reference to the facts surrounding the assault, there could have been no sexual harassment claim against the employer." *Id.* The same is true here: if the assault and battery alleged occurred and the Defendants knew about Freelain's complaints, that could be the catalyst for the negative conduct alleged in the other counts. In other words, without the assault and battery, which led to Freelain's complaint about it, there might not have been any animus against him.

*Quela v. Payco-General American Credits, Inc.*, 84 F. Supp. 2d 956, 960 (N.D. Ill. 2000), is also helpful. The plaintiff in *Quela* alleged that "because he prepared and presented a statement regarding the hostile work environment to management, he was subjected to physical threats, intimidation and verbal abuse from his manager[.]" *Id.* at 960-61 (internal quotation marks omitted). Accordingly, the court exercised supplemental jurisdiction over state law assault and battery claims because they essentially formed the basis for the Title VII retaliation claim. *Id.* And the same situation is presented here. Like in *Quela*, what occurred between Freelain and Vardal, and whether Freelain made complaints, is highly relevant to whether the Village retaliated or discriminated against Freelain.

In sum, the Court finds there is at least a "loose factual connection" between the federal counts and Counts V and VI, and will exercise supplemental jurisdiction over them accordingly.

### B. Illinois Governmental Tort Immunity Act

The Defendants alternatively contend that Counts V and VI are barred by

the Illinois Governmental Tort Immunity Act, 745 ILCS 10/2-204. Section 2-204 of the Act provides, "Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204. In other words, "an employee is only liable for his own tortious conduct; there is no liability based on respondeat superior." *Frazier v. Harris*, 266 F. Supp. 2d 853, 872 (C.D. Ill 2003). Additionally, Section 2-109 extends that immunity to local public entities like the Village: "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109.

Initially, Freelain alleges that Vardal played a *direct role* in the claims through her own intentional conduct; he does not allege that Vardal is liable "for an injury caused by the act of omission of another person." R. 24 ¶¶ 15-17. Thus, Section 2-204 is not applicable to her. The claims against her can proceed.

As it relates to the Village, Freelain sued the Village "on a theory of respondeat superior on the state law claims, except for Count VI." R. 24 ¶ 3. Section 2-204 precludes one *employee* from being held liable for another *person*'s act or omission. Vicarious liability in that situation is prohibited. Nonetheless, it is Section 2-109 that governs the Village's potential liability, and it does not explicitly preclude a plaintiff from using the theory of respondeat superior to establish a public entity's liability. Rather, it only says that a public entity cannot be vicariously liable if its employee is not liable. *See Frazier*, 266 F. Supp. 2d at 872 ("The City is also immune because the individual employees are immune.").

Accordingly, because the Village has not established why the claim against Vardal in Count V should be dismissed, it likewise cannot establish why the claim against it in Count V should be dismissed.

Turning to Count VI, Freelain has not set forth any theory of liability against the Village, regardless of the application of Sections 2-109 and 2-204. He explicitly states in paragraph 3 of his amended complaint that he is *not* suing the Village on a theory of respondeat superior in Count VI. R. 24 ¶ 3. He also states that the "actions of [] Vardal were the direct and proximate cause of injuries" he suffered. R. 24 ¶ 66. He does not, however, allege any role that the Village played in the assault and battery claim. Thus, the claim cannot stand.

Freelain, presumably aware of this problem, argues in his response brief that "the [Village] caused [his] injury by permitting Sergeant Vardal to commit gender violence and assault and battery by using her supervisory authority as [Freelain's] supervisor." R. 42 at 15. But commentary in a brief does not serve as a substitute for factual allegations needed in a complaint. Therefore, to the extent Count VI can be construed against the Village, it is dismissed.

## CONCLUSION

The Defendants' motion to dismiss, R. 35, is denied as to Counts I, II, and IV against the Village; Count V against Vardal and the Village; and Count VI against Vardal. The Defendants' motion is granted as to Counts III and VI against the Village, and those claims are dismissed without prejudice. Freelain is given leave to

file an amended complaint within 30 days to cure the deficiencies identified here, if possible.

ENTERED:

_Thomas M. Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: January 15, 2014